### RAPP v. KING.

(Circuit Court of Appeals, Sixth Circuit. January 6, 1927.)

No. 4620.

1. Brokers ⬡49(1)—Charge held to properly limit recovery of commissions on sales of coal, so as not to include unfilled orders taken in plaintiff's own name.

In action on contract for sale of coal on commission, charge limiting plaintiff's recovery, so as not to include anything because of unfilled orders, *held* proper, since orders were taken in plaintiff's name, and could not be enforced by customer against defendant, or by defendant against any one.

2. Brokers ⬡49(3)—Recovery cannot be had for commission on unfilled part of order for coal of different kind than what plaintiff advised defendant was sold.

Plaintiff *held* not entitled to recover for unfilled part of coal order under contract for sale thereof, where he exceeded authority in taking order for different sized coal than that which he advised defendant had been sold.

In Error to the District Court of the United States for the Western Division of the Southern District of Ohio; Smith Hickenlooper, Judge.

Action by George Rapp against J. E. King, doing business as the King Coal Company. To review a judgment granting only part of relief claimed, plaintiff brings error. Affirmed.

Otto Pfleger, of Cincinnati, Ohio (Colon Schott, of Cincinnati, Ohio, on the brief), for plaintiff in error.

Chas. H. Stephens, Jr., of Cincinnati, Ohio (Stephens, Lincoln & Stephens, of Cin-

cinnati, Ohio, and B. S. Wilson, of Ashland, Ky., on the brief), for defendant in error.

Before DENISON and MOORMAN, Circuit Judges, and WESTENHAVER, District Judge.

WESTENHAVER, District Judge. This is an action upon a contract. The plaintiff in error, also plaintiff below, recovered a verdict and judgment for $550.90. As he wants more, he prosecutes error to reverse the judgment. Numerous complaints are made, which can be best understood and disposed of by a rather full statement of the issues and of the rulings of the trial court.

Plaintiff's petition alleges that on March 10, 1919, defendant, a producer of coal, agreed with plaintiff, a dealer in coal, to deliver to such of plaintiff's customers as he might designate, at their places of business and in such quantities as they might order, between March 10, 1919, and April 1, 1920, 50,000 tons of high grade domestic lump coal in sizes not less than two inches in diameter and at the price of $2.40 a ton at the mine for orders received prior to December 1, 1919, and $2.50 between December 1, 1919, and March 10, 1920; that said coal was to be sold in advance by plaintiff for such prices as he could obtain above the prices stated; and that the proceeds of said sales were to be collected by defendant, and one-half of the difference between the purchase and selling prices was to be paid the plaintiff, each party paying his own expenses. It is further averred that plaintiff sold to his customers said 50,000 tons of coal; that defendant made deliveries to a few of said customers; that some of said coal was not of the kind called for by the contract and was rejected for that reason; that defendant failed and refused to furnish coal of the kind called for by the contract; and that plaintiff was compelled to purchase coal elsewhere at enhanced prices. As a result of this alleged breach, plaintiff claimed damages to the extent of one-half of the difference between the prices at which defendant had agreed to furnish the coal and the prices at which plaintiff had resold the same to his customers.

Defendant by his answer denies that he was a producer of coal, and alleges that he was a jobber, buying and selling coal, and denies generally and specifically that any contract was made such as is stated by plaintiff. Defendant then states specifically the terms of the contract which he claims was made. He avers that it was agreed that plaintiff should try to sell coal from time to time at prices in excess of the prices at which the defendant could buy the same; that plaintiff was to keep in frequent communication with defendant as to the prices at which plaintiff should sell coal, so as to make a profit thereon; that the profits realized on such sales so made should be divided equally between the parties, or that one-half of such profits should be paid plaintiff as his commissions on such sales. He also avers that plaintiff had been paid his full commissions, and that in fact, upon a proper statement of accounts, plaintiff was indebted to the defendant.

Upon the issues thus framed, the case was tried to a jury. At the conclusion of plaintiff's testimony, defendant moved for a verdict in his favor on the ground, among others, that the contract stated in the petition was not proved, which motion was denied and an exception taken. Again, at the conclusion of all the testimony, defendant renewed his motion on this ground, which was again denied and exception taken. In point of fact, there is no evidence to support the contract pleaded. It was so ruled in the charge to the jury. The trial court, however, permitted a full investigation of the entire controversy, and sent the case to the jury under a charge authorizing a recovery in accordance with the court's view of the contract actually made and proved, regardless of all defects in the pleadings. No amendment was at any time asked or made to conform the petition to the case made by the testimony. Defendant is not complaining of these irregularities, and plaintiff obviously has no ground of complaint.

The trial court, in its charge, construed the contract or relationship between the parties as one of principal and agent. Whether this was the proper view may well be doubted. The error, if any, however, is in plaintiff's favor. The charge permitted a recovery by plaintiff of one-half of the difference between plaintiff's selling price and defendant's purchase price upon all the sales made or orders taken which had been filled, including some 17 cars shipped to the Detroit Coal Sales Company and refused by it. The charge likewise permitted the jury to exclude all losses which defendant had suffered upon all shipments, including the cars rejected by the Detroit Coal Sales Company, except under conditions not now necessary to state, for the reason that the verdict deducted nothing because of any losses sustained by defendant. The verdict was for the maximum amount to which plaintiff is entitled, including interest, measuring plaintiff's damage by the difference between defendant's purchase price and plaintiff's resale price,

and excluding all losses suffered by defendant in connection with any of the shipments. This finding of the jury renders immaterial or harmless all errors complained of by plaintiff, except those now to be stated.

The meritorious question involves certain sales which plaintiff claims to have made and ordered defendant to fill, but which were not filled, including that part of the order of the Detroit Coal Sales Company not covered by the rejected shipment. It is defendant's theory that plaintiff was not its agent, but that the parties had assumed a relationship of joint adventurers or of partners; that the sales made or orders taken by plaintiff were taken in his own name and on his own account; that the plaintiff might at his option place or refrain from placing with defendant any or all such orders, and that defendant became interested therein only when an order was so placed and accepted; and also that plaintiff's profit or commission was to be one-half only of the net profits after deducting losses on the business actually done. In so far as defendant might be liable because of a refusal to furnish coal or fill any order, it is contended that no such case is pleaded, and that no facts appear warranting a recovery on that theory.

The trial court construed the contract or relationship as that of principal and agent. Its charge permitted a recovery upon all sales made or orders taken by plaintiff with respect to which, under the law applicable to principal and agent, he was able to show a commission had been earned. As to the disputed orders not filled, the court charged that he had not taken these orders or made sales contracts in such a manner as to create an enforceable obligation in defendant's favor against the purchasers. For this reason, the court gave a binding instruction that plaintiff was not entitled to recover anything because of the unfilled orders in dispute, including the residue of the order of the Detroit Coal Sales Company. If any error was committed against plaintiff, it was in so charging.

[1] Upon an examination of the entire record, we are of opinion that in this respect the charge is correct. Many of the unfilled orders could not be enforced by the customer against defendant, as contracts for the sale of coal, or by defendant against anybody. All of them, whether valid contracts or not, were taken by the plaintiff in his own name. The practical interpretation by the parties of their relation was that plaintiff might or might not, as he saw fit, turn all or any part of his orders over to the defendant to be filled, or fill them himself from other sources. Every order taken by plaintiff and placed with defendant, under such circumstances as created a contract, every order, whether binding or not, accompanied by adequate shipping directions, and every demand made by any of plaintiff's customers on defendant for coal, were promptly filled, with the possible exception of the Detroit Coal Sales Company. In no view of the relationship between the parties, as shown by the evidence, was plaintiff entitled to a more favorable charge with respect to the unfilled orders in dispute. The greater weight of the evidence is that the disputed orders were never placed with defendant, but we are disposing of the case in the aspect most favorable to plaintiff, and in accord with his claim.

The Detroit Coal Sales Company transaction merits a separate comment. It was the dispute over this order that terminated the relations between the parties, although it is not asserted that the relationship might not have been terminated at will, subject to liability for any previous breach. The plaintiff took this order in his own name. It calls for the delivery of 2,500 tons of 4 and 6 inch lump coal. The price was $2.60 a ton, May and June delivery. Whether it was executed by that company, so as to make it a binding contract, cannot be told definitely from the record. At or before the time of taking this order, plaintiff called the defendant over the telephone. The parties agree that defendant said that he could furnish two inch lump coal at $2.40 a ton. Plaintiff, although requested, did not send the defendant a copy of the order or contract, and defendant never knew that 4 and 6 inch lump was called for. The shipment was rejected on the ground, as stated by plaintiff, that the coal shipped was ordinary gas coal, and not of the kind known as domestic coal, and that he could have procured its acceptance, had it been domestic coal, notwithstanding the size was not in conformity to the coal company's order, nor the size communicated by him to defendant. The rejected coal was sold by defendant at a loss. Plaintiff supplied the coal company from other sources at a price which enabled him to earn the same profit as he would have made had defendant filled the entire order.

[2] The charge of the court, as has been said, permitted a recovery of full commission or profit on all rejected shipments, without deduction for losses, including this one. The verdict of the jury gave plaintiff that full commission. In our opinion he is not entitled to any other or additional recovery—first, because if he was an agent, he had not

bound his customer by any contract enforceable by defendant; and, second, because the sales contract was other and different from the order reported orally by him as having been or about to be made. Either wrongfully or negligently, he had exceeded his authority and had attempted to take an order contrary to his instructions. In that situation, neither the plaintiff nor the coal company had any right to call on defendant for further coal. Nor had defendant any right to require the coal company to accept coal of the kind and quality which the plaintiff advised defendant had been sold. Hence it was not error to charge that plaintiff was not entitled to recover because of the unfilled part of this order.

Many other errors are argued in the brief, but none of them are properly preserved by exception or properly assigned as error. In point of fact, the exceptions to the charge and the assignments of error are so inadequate that the judgment might have been affirmed without a consideration of the rulings herein examined and discussed. In our opinion, substantial justice has been done.

The judgment of the court below is affirmed, with costs.